JUSTICE LYTTON, dissenting: I dissent from the majority’s decision in this case. I would find that the Department had no authority to attach Hawkins’s prison employment earnings as reimbursement pursuant to section 3 — 7—6 of the Code. I would also find that the Department could not obtain a judgment against Hawkins pursuant to section 3 — 7—6. I The majority holds that sections 3 — 7—6 and 3 — 12—5 of the Code can be read harmoniously to allow the Department to attach any and all income that a prisoner earns as an employee of the correctional industries program. I disagree. Section 3 — 12—5 states in pertinent part: “Persons performing a work assignment [for the correctional industries program] may receive wages under rules and regulations of the Department. *** Of the compensation earned pursuant to this Section, a portion, as determined by the Department, shall be used to offset the cost of the committed person’s incarceration. *** All other wages shall be deposited in the individual’s account ***.” 730 ILCS 5/3 — 12—5 (West 2008). According to the Department’s rules and regulations, “Committed persons shall be compensated for the duties performed in accordance with the pay plan established for the [correctional industries] program.” 20 Ill. Adm. Code §117.40(d), adopted at 23 Ill. Reg. 13597, 13601, eff. November 1, 1999. The portion of a prisoner’s compensation used to offset the costs of his incarceration is 3% to 5%, as determined by the Director. 20 Ill. Adm. Code §117.30(f), adopted at 23 Ill. Reg. 13601, eff. November 1, 1999. The plain and unambiguous language of section 3 — 12—5 of the Code and the regulations promulgated thereunder require the Department to provide compensation to prisoners who work. Additionally, section 3 — 12—5 and its accompanying rules and regulations expressly limit the amount the Department can obtain to “offset the cost of the committed person’s incarceration” to 3% to 5% of the prisoner’s wages. Thus, allowing the Department to utilize section 3 — 7—6 of the Code to attach more than 3% to 5% of a prisoner’s wages as reimbursement “for expenses incurred by their incarceration” violates section 3 — 12—5 and the regulations promulgated thereunder. This conclusion is supported by the legislative history of section 3 — 12—5 of the Code. The majority contends that it is inappropriate to examine the legislative history of section 3 — 12—5. I disagree. The principal objective of statutory construction is to determine and give effect to the legislature’s intent. People v. Spurlock, 388 Ill. App. 3d 365, 370, 903 N.E.2d 874, 880 (2009). In addition to the statutory language, courts may consider the purpose behind the law and the evils sought to be remedied. Spurlock, 388 Ill. App. 3d at 371, 903 N.E.2d at 880. Thus, it is proper to examine the legislative history of section 3 — 12—5 to determine its purpose and objectives. The sponsor of the bill that amended section 3 — 12—5 of the Code to include the offset provision explained that the bill’s purpose was to teach incarcerated persons “a skill and a new work ethic” and to allow them to “save[ ] some money to come back into the community.” 86th Ill. Gen. Assem., Senate Proceedings, May 25, 1989, at 429 (statements of Senator Collins). Representative Tom Homer expressed his support for the bill, explaining: “I think it combines a lot of good concepts that all our constituents are for. It allows the inmates to be productive. It teaches them a trade. At the same time, it helps reduce the cost of incarcerating inmates which has risen to alarming amounts and allows the Department of Corrections to recoup part of the costs of keeping inmates in the prison system.” 86th Gen. Assem., House Proceedings, June 15, 1989, at 168 (statement of Representative Homer). The statements above reflect that the legislature intended for prisoners to pay a portion (3% to 5%) of the compensation that they earn to the Department as reimbursement for costs of incarceration and be allowed to save the rest of the money they earn. The majority’s interpretation of 3 — 7—6 to allow attachment of any and all of a prisoner’s wages directly conflicts with section 3 — 12—5, which specifically limits the amount the Department can recover from a prisoner’s wages. When two statutes cannot be read harmoniously, the more specific one applies over the more general. Board of Education of Indian Prairie Community Unit School District No. 204 v. Regional Board of School Trustees, 393 Ill. App. 3d 561, 564, 913 N.E.2d 630, 634 (2009). Section 3 — 7—6 generally addresses the responsibility of committed persons “to reimburse the Department for the expenses incurred by their incarceration.” 730 ILCS 5/3 — 7—6(a) (West 2008). Nowhere does section 3 — 7—6 mention prisoners’ employment compensation. Section 3 — 12—5, on the other hand, directly deals with compensation of persons performing work in the Department’s employment program. See 730 ILCS 3 — 12—5 (West 2008). It also specifically addresses the amount the Department may recover to “offset the cost of the committed person’s incarceration.” 730 ILCS 3 — 12—5 (West 2008). Section 3 — 12—5 is the more specific statute and must be applied to prohibit the Department from attaching all of Hawkins’s employment earnings pursuant to section 3 — 7—6. For these reasons, I would affirm the trial court’s decision denying attachment of Hawkins’s bank account. II With respect to Hawkins’s cross-appeal, I would find that the Department was not allowed, under section 3 — 7—6, to authorize the Attorney General to obtain a monetary judgment against Hawkins. Section 3 — 7—6(d) of the Code provides that whenever the Department’s Director or his designee “knows or reasonably believes that a committed person, or the estate of that person, has assets which may be used to satisfy all or part of a judgment rendered under this Act,” he may “authorize the Attorney General to institute proceedings to require the persons, or the estates of the persons, to reimburse the Department for expenses incurred by their incarceration.” 730 ILCS 5/3 — 7—6(d) (West 2008). Based on the plain language above, a reimbursement action may only be initiated against a committed person when the Department “knows or reasonably believes” that he “has assets which may be used to satisfy all or part of a judgment.” (Emphasis added.) 730 ILCS 5/3 — 7—6(d) (West 2008). Here, Hawkins’s only asset was the approximately $11,000 in his bank account that he earned as wages while working in prison. Since the Department may not recover more than the statutorily authorized deductions, Hawkins had no assets that could be attached under section 3 — 7—6. The Department could not “reasonably believe[ ]” that Hawkins had “assets which may be used to satisfy all or part of a judgment rendered under [the Code].” 730 ILCS 5/3 — 7—6(d) (West 2008). The action filed against Hawkins was not authorized under section 3 — 7—6(d) and should have been dismissed. For these reasons, I would reverse the trial court’s order entering a monetary judgment of approximately $455,000 in favor of the Department and against Hawkins.